**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **S.F., E.F., and A.F.**

**No. 20-0817** (Monongalia County 20-JA-39, 20-JA-40, and 20-JA-41)

## MEMORANDUM DECISION

Petitioner Father B.F., by counsel Diane D. Michael, appeals the Circuit Court of Monongalia County's September 22, 2020, order terminating his parental rights to S.F., E.F., and A.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Frances C. Whiteman, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that he sexually abused E.F., finding aggravated circumstances existed, and in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect and abuse.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the DHHR filed a child abuse and neglect petition alleging that the children had been physically and emotionally abused while in the care of their mother and custodian, R.L. The DHHR alleged that the children were locked in their rooms for hours at the mother's home and provided pet pads for urinating and defecating. The DHHR also alleged that R.L. physically abused the children, causing bruising, which was apparent when the children were removed from the mother's home, and it was alleged that the mother was aware of this abuse. In regard to petitioner, the DHHR alleged that he had abandoned his parental responsibilities and had failed to provide the children with emotional or financial support.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

The circuit court held a preliminary hearing in February of 2020. At the hearing, a DHHR worker testified that petitioner was previously convicted of assaulting E.F. in 2013, when that child was three years old. Further, the evidence showed that petitioner had not seen the children since October of 2019, and had not paid child support since September of 2019. The mother testified that petitioner had a visitation with the children in the summer of 2019, but he called her and requested that she come get the children before the visit was over. Petitioner acknowledged that he pled guilty to an assault charge in 2013 but denied that he had committed the crime. Petitioner also testified that he was not able to take the children, given his current living situation, but anticipated a change in his accommodations in the following months. Petitioner admitted that his child support obligation was in arrears in the range of $4,000 to $10,000, and that he stopped making payments in September of 2019, because he was unemployed. Ultimately, the circuit court found probable cause that the children were in imminent danger if placed in petitioner's care and ratified their placement in foster care.

In July of 2020, the DHHR amended the petition to include A.F.'s recent disclosures that petitioner sexually abused her.[2] The DHHR also included allegations that R.L. had sexually abused E.F.

The circuit court held an adjudicatory hearing later in July of 2020. The DHHR called the children's therapist who had provided counseling for the children since January of 2020. The therapist testified that E.F. made disclosures of sexual abuse against petitioner and her custodian, R.L., during separate sessions. According to the therapist, the child disclosed that petitioner "touched [her] girl parts like this[.]" The therapist described that E.F. then "made a rapid penetrating motion toward her genitals" "with her first finger and little finger extended." E.F. also disclosed that petitioner's girlfriend "touched [her] girl parts like this," and demonstrated a rubbing motion "[w]ith all of her fingers extended." The therapist testified that E.F. was "kind of . . . back-and-forth" on the timeframe but ultimately said that the incident occurred around two years ago. Notably, E.F. described R.L.'s sexual abuse differently than the abuse that she alleged petitioner perpetrated upon her, alleging that R.L. made her touch his "boy part" while he wore only underwear, among other acts. When asked whether E.F may have misinterpreted petitioner's innocent actions, such as assisting the child with hygiene, as sexual abuse, the therapist testified that based on E.F.'s description, she could not "think of any possible way as far as what was demonstrated to me . . . on how it could have been washing, cleaning, or even applying medication." The therapist testified that E.F. could distinguish between petitioner and R.L. The therapist further testified that the children had advanced sexual knowledge for their ages. In response to this testimony, petitioner denied that he had sexually abused E.F., asserting that the child had "bathroom accidents" and he assisted her in personal hygiene afterwards. Petitioner also testified that the abuse could not have occurred during the time frame that E.F. alleged, because the mother was not cooperating with visitation at that time. However, when petitioner was questioned further regarding the time frame, he asserted that his visits were "hit and miss" and

---

[2]Although the DHHR alleged that petitioner sexually abused the youngest child, A.F., it later presented evidence that E.F. made the disclosure that petitioner sexually abused her. Petitioner does not challenge this discrepancy on appeal, and we consider the error clerical and nonprejudicial based on the circumstances of this case.

acknowledged that the longest period of time that he had gone without visiting with the children was nine months, which he stated was October of 2019 up until the July 2020 adjudicatory hearing. The circuit court found petitioner's testimony to be "very inconsistent as far as timing goes."

Petitioner explained that the mother would not let him visit with the children after she moved to Morgantown, sometime after September of 2019. Petitioner maintained contact with S.F. through social media until November of 2019, at which point the mother discontinued contact. However, prior to contact being discontinued, petitioner testified that when S.F. was seven years old, she disclosed to a family friend that R.L. sexually abused her. Petitioner questioned S.F., but the child recanted and said that she was joking about the abuse. Petitioner did not contact law enforcement. Petitioner also remembered when S.F. had a black eye, which the child stated R.L. caused. Petitioner testified that he questioned the mother regarding the injury but did not contact law enforcement. Further, petitioner testified that he missed two months of paying child support while unemployed but that he gained employment in January of 2020 and the support payments were automatically withheld from his paychecks. Petitioner called two witnesses, the children's maternal aunt and his fiancé, who vouched for his parenting skills and the mother's intentional alienation of the children from petitioner. The DHHR also presented testimony related to the condition of the children's home and their disclosures of being locked in their bedrooms, as well as the physical and emotional abuse that the mother and R.L. perpetrated on the children.

Ultimately, the circuit court found that the children had been abused and neglected by petitioner, the mother, and R.L. In regard to petitioner, the circuit court found that he had failed to protect the children and failed to provide them emotional support, finding that petitioner "saw the abuse and [did not] do anything about it." Additionally, the circuit court found that petitioner sexually abused E.F. The court based its finding on the testimony of the children's therapist, noting that it was "very reliable, that [the disclosure] was graphic, that the demonstration . . . was very graphic," and not something that a child of her age "would have exposure to or knowledge of if they [had not] experienced it." The circuit court's adjudicatory order reflected these findings and also emphasized "the rapport built [between the therapist and E.F.]" prior to the disclosure. Finally, the circuit court adjudicated petitioner as an abusing parent and found that he had subjected the children to aggravated circumstances.

In August of 2020, the circuit court held the final dispositional hearing. Petitioner moved for a post-adjudicatory improvement period, or, alternatively, leave to relinquish his parental rights to the children. Petitioner presented no evidence in support, but his counsel proffered that he was willing to fully participate in a litany of services, if offered. The DHHR opposed petitioner's motion due to the circuit court's finding of aggravated circumstances. The circuit court ultimately denied petitioner's motion finding that petitioner had failed to acknowledge the abuse and neglect that he committed against the children. The circuit court denied petitioner's motion to voluntarily relinquish his parental rights based on his failure to acknowledge the issues and on its finding that voluntary relinquishment would not be in the children's best interests.

Thereafter, the DHHR presented testimony to support its recommended disposition, termination of petitioner's parental rights. A DHHR worker testified that petitioner had not contacted the DHHR regarding services or otherwise demonstrated that he had sought services on his own. The DHHR also moved the circuit court to consider prior testimony presented at the

adjudicatory hearing, which the court granted. The circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of neglect and abuse in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children. Accordingly, the circuit court terminated petitioner's parental rights by its September 22, 2020, order.[3] Petitioner now appeals that order.

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that he sexually abused E.F. Petitioner argues that there was insufficient evidence to find that he had sexually abused the child. Petitioner asserts that "[i]t is possible that . . . [E.F.] was mistaken as to [p]etitioner's actual actions versus those of [abusing] adults." Petitioner also asserts that E.F. may have "misclassified" petitioner performing an innocent caretaking act of cleaning her vaginal region after the child urinated on herself. Petitioner argues that sexual abuse "is an egregious charge" and he should only be adjudicated if "there is little to no doubt that he ha[d] actually abused E.F." In petitioner's opinion, there is substantial doubt as to whether the abuse occurred based on these possible mistakes in E.F.'s disclosure. Based upon our review, we find no error in this finding.

> [A]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014).

---

[3]The parental rights of the mother and the custodial rights of R.L. were terminated below. According to the parties, the permanency plan for the children is adoption in their respective foster homes.

4

Although petitioner seems to argue that, due to the egregious nature of the allegation, the circuit court was required to find proof of sexual abuse beyond a reasonable doubt, this is simply not the standard of proof in abuse and neglect proceedings. This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). "[T]he clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further,

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Importantly, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

Here, E.F.'s therapist provided clear and convincing evidence that petitioner had sexually abused E.F. As found by the circuit court, E.F.'s disclosure was "very reliable" due to the rapport built between the child and her therapist. The circuit court further found that E.F. provided a "very graphic" demonstration of the abuse at the time of the disclosure. On appeal, petitioner levies the same arguments he asserted below. Yet, the therapist's testimony addressed both arguments fully. The evidence shows E.F. could easily distinguish between petitioner and R.L., and, in fact, addressed them with different names (referring to petitioner as "dad" and R.L. by his full name at all times). According to the therapist, the child was not mistaken as to the perpetrator's identity for this particular incident of sexual abuse. Likewise, the therapist testified that E.F. demonstrated "a rapid penetrating motion toward her genitals" "with her first finger and little finger extended." When asked if petitioner's actions could have been a misinterpretation of an innocent act, such as assisting the child with hygiene, the therapist testified that she could not "think of any possible way as far as what was demonstrated to me . . . on how [the demonstration] could have been washing, cleaning, or even applying medication." The circuit court considered this testimony, which it deemed to be "very reliable," and we find that its conclusion that petitioner sexually abused E.F. is not clearly erroneous. Accordingly, petitioner is entitled to no relief.

In the same argument, petitioner asserts that the circuit court erred in finding that aggravated circumstances existed based on the facts of this case. However, petitioner's sexual abuse of E.F. plainly fits the statutory definition. West Virginia Code § 49-4-602(d)(1) provides that the DHHR is not required to make reasonable efforts to reunify the family when "[t]he parent has subjected the child, another child of the parent or any other child residing in the same household . . . to aggravated circumstances, which include, but are not limited to, abandonment, torture, chronic abuse *and sexual abuse*." (Emphasis added). *See also* W. Va. Code § 49-4-

5

602(d)(2)(E) (stating that the DHHR is not required to make reasonable efforts to reunify the family if the parent has "[c]ommitted sexual assault *or sexual abuse of the child*") (emphasis added). Clearly, the circuit court was justified in concluding that aggravated circumstances existed upon finding that petitioner had sexually abused E.F.

Finally, petitioner argues that the circuit court erred in finding there was no reasonable likelihood that he could substantially correct the conditions of neglect or abuse in the near future and in denying his motion for a post-adjudicatory improvement period. Petitioner asserts that the conditions of abuse and neglect could have been corrected, but he readily admits that he did not acknowledge his sexual abuse of E.F. and only acknowledged that he failed to provide emotional and financial support for the children. We find petitioner is entitled to no relief.

As petitioner concedes on appeal, his failure to acknowledge the sexual abuse of E.F. is critical to the circuit court's ruling regarding his motion for a post-adjudicatory improvement period. We have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Due to petitioner's denial of the sexual abuse, that condition of abuse and neglect would be untreatable. "[I]f a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). The circuit court could be justified in denying petitioner's motion for a post-adjudicatory improvement period on this basis alone.

Further, petitioner fails to recognize that the circuit court's finding that he sexually abused E.F. fully supports its conclusion that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and precludes the imposition of less restrictive dispositional alternatives to termination of petitioner's parental rights, such as the granting of an improvement period. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. Pursuant to West Virginia Code § 49-4-604(d)(5), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the abusing parent

> ha[s] sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems, or assist the abusing parent or parents in fulfilling their responsibilities to the child.

As we determined above, the circuit court did not err in finding that petitioner had sexually abused E.F., and, therefore, it was not error to conclude that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future.

Importantly,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court found that there was no reasonable likelihood that the conditions could be corrected, it was within its discretion to terminate petitioner's parental rights without imposing a less restrictive alternative, such as an improvement period. Ultimately, petitioner is entitled to no relief on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 22, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton